[No. 38589. Department Two. September 29, 1966.]

THE CITY OF MEDINA, *Respondent*, v. T. A. ROSE, *Appellant*.*

*Croson, Johnson & Wheelon*, for appellant.

*Stephen Chadwick, Jr.* (of *Chadwick, Chadwick & Mills*), for respondent.

LANGENBACH, J.†—This is an appeal from a conviction for

*Reported in 418 P.2d 462.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

a violation of a city ordinance zoning a certain area for family dwellings into lots containing 20,000 square feet. There were two counts and two convictions.

Count 1 charged the offense of subdividing land improved with a dwelling, decreasing the minimum lot area for such dwelling below that required by the land use regulation of the city. Count 2 charged the offense of procuring the issuance of building permit upon the site by filing, or causing to be filed as his act, a plot plan misrepresenting the entire tract.

By ordinance No. 16 the minimum lot area, in which appellant's lot was situated, was 20,000 square feet. This was the area of his lot when he purchased it in 1961. In August of 1963, he contracted to sell and convey one half thereof and desired to improve his residence upon the remaining half. He requested and was denied a permit. He sought a variance from the city zoning commission. Upon its refusal, he initiated a civil proceeding and an adverse decision was rendered December 11, 1963. On December 29, 1963, he deeded 10,000 square feet of his lot to a neighbor with a provision that the neighbor could avoid the conveyance if he were unable to procure a building permit for the conveyed one-half.

On May 21, 1964, and again on August 25, 1964, construction blueprints (for the renovation of and an addition to appellant's home) were prepared. They were submitted to the zoning board with a building permit application, which was signed only by the contractor. The blueprints and the application showed a 20,000-square-foot lot. The building permit was then issued. This was the basis for count 2.

Ordinance No. 16 was enacted in December, 1955. Its pertinent section, so far as count 1 is involved, and as later codified in ordinance No. 159, provided in part: "5-1.08. *Regulation of R-20 Land Use District.* The minimum lot area for each dwelling in this district [in which appellant's lot was located] shall be 20,000 sq. feet."

At the time of its enactment, it contained no document designated as a comprehensive plan; nor did it contain any land use map. It merely outlined the metes and bounds

into which the three districts were thereby established.

In December, 1957, ordinance No. 56 was enacted, the purpose of which was "to confirm those functional subdivisions of a comprehensive plan." Section 2 provided that "The following ordinances adopting functional elements of a comprehensive plan for the City's development are hereby ratified and confirmed and to whatever extent necessary re-enacted: Ordinances No. 16 . . . . ." The text of ordinance No. 16 was not set forth. Reference to it was made by code number designation.

In August, 1964, as a further development in its comprehensive plan, the city enacted ordinance No. 159. Section 1 provided in part, "That Comprehensive Plan for the physical and other generally advantageous development of the City of Medina hereto attached and by this reference incorporated herein . . . ." The sections of ordinance No. 16, under which appellant was convicted, are attached to such ordinance and referred to by their code numbers. Section 2 provided in part:

> Where reference is made to prior ordinances of the City, such is done for purposes of legislative history, alone, to show where the subject matter was previously treated. To the extent that this ordinance is valid and treats the same subject matter, all prior ordinances or provisions thereof are hereby repealed.

As to count 1 (decreasing his lot size in violation of the minimum lot area), appellant argued that (1) ordinance No. 16 was invalidly enacted for want of a comprehensive plan; (2) ordinance No. 56 did not set forth the text of ordinance No. 16 as required by RCW 35.24.210; (3) all three ordinances were invalidly enacted for want of proper publication; and (4) ordinance No. 159 repealed ordinance No. 16, without a saving clause so as to vitiate any offense by appellant. These assignments will be considered seriatim.

1. When the city enacted ordinance No. 16, it satisfied the requirements of a comprehensive plan. Although no map was attached to the ordinance, it did not violate RCW 35.63.100:

> The commission may recommend to its council or board

the plan prepared by it as a whole, or may recommend parts of the plan by successive recommendations; the parts corresponding with geographic or political sections, division or subdivisions of the municipality, or with functional subdivisions of the subject matter of the plan, or in the case of counties, with suburban settlement or arterial highway area. It may also prepare and recommend any amendment or extension thereof or addition thereto.

Before the recommendation of the initial plan to the municipality the commission shall hold at least one public hearing thereon, giving notice of the time and place by one publication in a newspaper of general circulation in the municipality and in the official gazette, if any, of the municipality. A copy of the ordinance or resolution adopting or embodying such plan or any part thereof or any amendment thereto, duly certified as a true copy by the clerk of the municipality, shall be filed with the county auditor. A like certified copy of any map or plat referred to or adopted by the ordinance or resolution shall likewise be filed with the county auditor. The auditor shall record the ordinance or resolution and keep on file the map or plat.

■ This did not require the city to have a map, provided the ordinance itself was definite, certain, precise and clear in its terms and gave notice of its restrictions. Not only did ordinance No. 16 do this, but it was also geographically comprehensive and reasonable. *State ex rel. Weiks v. Tumwater,* 66 Wn.2d 33, 400 P.2d 789 (1965). See generally, Harr, In Accordance with a Comprehensive Plan, 68 Harv. L. Rev. 1154 (1955). It also complied with the requirements of RCW 35.63.100: "The commission may recommend . . . parts of the plan by successive recommendations; the parts corresponding . . . with functional subdivisions of the subject matter of the plan . . . . " It also complied with the provisions of RCW 35.63.090.[1]

[1]"All regulations shall be worked out as parts of a comprehensive plan which each commission shall prepare for the physical and other generally advantageous development of the municipality and shall be designed, among other things, to encourage the most appropriate use of land throughout the municipality; to lessen traffic congestion and accidents; to secure safety from fire; to provide adequate light and air;

Ordinance No. 16 provided for a population density control and set specific legal limitations on property use therein. Ordinance No. 56 was "to confirm those functional subdivisions of a comprehensive plan", and ordinance No. 159 was a furtherance of the comprehensive plan. Neither ordinance No. 56 nor ordinance No. 159 re-enacted ordinance No. 16; nor did they revise or amend it, as required by RCW 35.24.210, which provided in part: "No ordinance or any section thereof shall be revised or amended unless the new ordinance sets forth the revised ordinance or the amended section at full length." Ordinance No. 56 enacted a comprehensive plan and ordinance No. 159 referred to the codification of sections of ordinance No. 16. "Such a statute does not contemplate the re-enactment or the re-publication of the ordinances, but merely their compilation for convenient use and to simplify the method of their proof." *State ex rel. Weiks v. Tumwater, supra,* at 37. Thus, all three of the attacked ordinances were properly enacted and in force at the time of their violation by appellant.

Finally appellant attacked the manner of posting these three ordinances instead of their publication in a newspaper. This was cited as a violation of the following statutes:

Section 12, chapter 184, Laws of 1915 provides:

All ordinances shall be published in a newspaper printed within said city; said publication shall be made by the newspaper designated as the official newspaper of said city, if there be one. If there be no official newspaper nor other newspaper published in said city, then publication shall be made in such manner as the city council may direct.

Section 18, of the same chapter provides:

Every ordinance shall be signed by the mayor, attested

to prevent overcrowding of land; to avoid undue concentration of population; to promote a coordinated development of the unbuilt areas; to encourage the formation of neighborhood or community units; to secure an appropriate allotment of land area in new developments for all the requirements of community life; to conserve and restore natural beauty and other natural resources; to facilitate the adequate provision of transportation, water, sewerage and other public uses and requirements." RCW 35.63.090.

by the clerk, and published at least once in a newspaper published in such city, or printed and posted in at least three public places therein.

■ Appellant argued that if *any* newspaper was circulated in the city, it must be used before the ordinances might be posted in three public places. We construe these statutes to mean that where no newspaper is printed in the city, posting is the only, and therefore the necessary, means of publication. Under such circumstances, under the above statutes, posting was proper and legally sufficient. See, generally, 37 Am. Jur. *Municipal Corporations* § 151, p. 763-4; and 62 C.J.S. *Municipal Corporations* § 427, p. 821.

■ When respondent enacted ordinance No. 159, it did not, as appellant contended, vitiate any offenses against him. Ordinance No. 159 did not repeal ordinance No. 16; it simply codified all the previous ordinances concerning zoning under one code. Generally an ordinance may adopt by reference the provisions of existing ordinances. 5 McQuillin, Municipal Corporations § 16.12, p. 179 (3d ed. 1949).

As to count 2 (procuring a building permit by misrepresenting his lot area), appellant argued that (1) such an offense was not proscribed as a criminal act, and (2) if so, the city did not prove that he had done so intentionally. We do not agree.

The ordinances required that certain information including "plat plans drawn to scale showing the entire site, dimensions of the lot" be included in the application. This was patently not done. The ordinance declared it to be a misdemeanor to violate "any provisions."

Appellant's actions were such that the trial court could well find that he intended to misrepresent his application when he contracted to sell one half of the necessary property and then stated in his application for the building permit that it covered the entire 20,000 square feet of area. He could not avoid his responsibility and liability by having the builder sign the misleading application for the building

454

permit. He was liable for his agent's conduct in this regard. The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

---

January 17, 1967. Petition for rehearing denied.